IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DWAYNE ALBERTO FURET,          §
                               §
              Petitioner,      §
                               §
v.                             §      CIVIL ACTION NO. H-10-421
                               §      (Criminal No. H-06-268-01)
                               §
UNITED STATES OF AMERICA,      §
                               §
              Respondent.      §

## MEMORANDUM OPINION AND ORDER

Defendant, Dwayne Alberto Furet, has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Docket Entry No. 70) ("§ 2255 Motion"), together with a Supporting Memorandum (Docket Entry No. 71), alleging ineffective assistance of counsel and due process violations.[1] The United States has filed a Response to the Motion (Docket Entry No. 85), in which it moves for dismissal with prejudice, and Furet has replied (Docket Entry No. 90).

## I.   Factual and Procedural Background

On September 14, 2006, Furet pleaded guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(2).[2] At the rearraignment hearing

_____

[1]All docket entry references are to Criminal No. H-06-268-01.

[2]Tr. of Rearraignments on Sept. 14, 2006, Before the Hon. Sim Lake, United States District Judge ("Rearraignment Tr."), Docket

Furet admitted that he had committed the acts alleged in the indictment.[34] He did not indicate that these acts were influenced by a mental illness.  Furet was represented by assistant federal public defender Peter Bray before and during the rearraignment.[5]

At Furet's sentencing hearing on August 16, 2007, the court upwardly departed pursuant to Sentencing Guideline Section 4A1.3, sentencing Furet to 120 months in prison.[6]  The court considered the "defendant's numerous arrests, his propensity for violence," "the likelihood of recidivism," and "offenses for which [Furet had] not been adequately punished," and concluded that a higher offense level and criminal-history category "more closely reflect[ed] the extent and nature of [Furet's] criminal history and the need to protect the community from this repeat offender of violent crimes."[7]  When the court advised Furet that he could present information in mitigation, Furet accepted responsibility for his

_____

Entry No. 23, p. 5:5-8; United States of America v. Dwayne Alberto Furet, No. 4:06-CR-268-01, Docket Entry No. 47, p. 1.

[3]See Rearraignment Tr., Docket Entry No. 23, pp. 18:11-21:24.

[4]Furet also admitted that when law-enforcement officers advised him after his arrest that it was against the law for a felon to be in possession of a firearm, Furet replied, "So how am I supposed to protect myself?"  Rearraignment Tr., Docket Entry No. 23, pp. 21:13-24.

[5]Id. at 3:8.

[6]Tr. of Sentencing Hearing on August 16, 2007,("Sentencing Tr."), Docket Entry No. 51, pp. 4:20-6:23.

[7]Id. at 5:4-12.

actions and made no mention of his mental-health history.  Furet was represented by Mr. Chris Iles at sentencing.[8]

With Mr. Iles as counsel, Furet appealed to the Fifth Circuit, challenging the court's decision to upwardly depart and the extent of the departure.[9]  The Fifth Circuit affirmed the court's decision.[10]  Furet did not petition the Supreme Court for review.

In his § 2255 Motion Furet alleges that he was denied his Sixth Amendment right to effective assistance of counsel because (1) Bray failed to adequately investigate Furet's mental-health history, failed to request a mental-health evaluation, and advised Furet that he should not pursue an insanity defense, which taken together render Furet's guilty plea involuntary; (2) during the rearraignment Bray failed to object to Furet's guilty plea after learning that Furet was on the medications Zoloft and Trazodone; and (3) Iles failed to request an independent mental-health evaluation and failed to present Furet's mental-health history as mitigating evidence at sentencing and on appeal.[11]  Furet also alleges that he was denied due process of law because he pled

---

[8]Appointment of Attorney Larry Chris Iles for Dwayne Alberto Furet, Docket Entry No. 33.

[9]United States v. Furet, No. 07-20633 (5th Cir. June 5, 2008) (per curiam), attachment to § 2255 Motion, Docket Entry No. 70, p. 1.

[10]Id. at 2-3.

[11]Supporting Memorandum, Docket Entry No. 71, pp. 2-7; § 2255 Motion, Docket Entry No. 70, pp. 6-8.

-3-

guilty while incompetent and because the court, despite learning that Furet was on the medications Zoloft and Trazodone during the rearraignment hearing, did not suspend the rearraignment to investigate Furet's competency.[12]   Furet seeks an evidentiary hearing and a vacated conviction and sentence.[13]

## II.  § 2255 Standard of Review

A prisoner serving a sentence imposed by a federal court claiming

> the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  If the court concludes that the prisoner's motion is meritorious, it must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  Id. § 2255(b).

A motion under § 2255 "may not do service for an appeal," however, and a § 2255 petitioner "must clear a significantly higher hurdle than would exist on direct appeal" in order to obtain relief.  United States v. Frady, 456 U.S. 152, 102 S. Ct. 1584, 1593 (1982).  Any issues that were raised and rejected on direct

---

[12]See Supporting Memorandum, Docket Entry No. 71, p. 3.

[13]§ 2255 Motion, Docket Entry No. 70, p. 10.

appeal may not be asserted in a § 2255 motion.  See United States
v. Webster, 392 F.3d 787, 791 (5th Cir. 2004) (citing United States
v. Rocha, 109 F.3d 225, 229 (5th Cir. 1997)).  Additionally,
"[n]onconstitutional claims that could have been raised on direct
appeal, but were not, may not be asserted in a [§ 2255]
proceeding."  United States v. Vaughn, 955 F.2d 367, 368 (5th
Cir. 1992).

Only two types of claims may be raised in a § 2255 motion.
See United States v. Cervantes, 132 F.3d 1106, 1109
(5th Cir. 1998).  First, a § 2255 petitioner may raise a
constitutional or jurisdictional claim.  Id.  If, however, the
claim could have been raised on direct appeal, but was not, the
petitioner must first show cause and prejudice.  Id.  Second, a
§ 2255 petitioner may assert any other type of claim that could not
have been raised on direct appeal.  Id.  To obtain relief on this
second type of claim the petitioner must show that allowing the
asserted error to stand "would result in a complete miscarriage of
justice."  Id.

### III.  Analysis

**A.  Claims for Ineffective Assistance of Counsel**

1.  Applicable Law

A claim of ineffective assistance of counsel is proper in a
§ 2255 motion because it raises an issue of constitutional

-5-

magnitude that cannot generally be resolved on direct appeal. United States v. Bass, 310 F.3d 321, 325 (5th Cir. 2002). A petitioner asserting ineffective assistance of counsel must demonstrate that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 2064 (1984)). This two-part test applies to both claims of ineffective assistance of counsel at trial and claims of ineffective assistance of counsel on appeal. See Smith v. Robbins, 528 U.S. 259, 120 S. Ct. 746, 764 (2000) (explaining that "the proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in [Strickland]").

The first prong of the test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 104 S. Ct. at 2064. Reasonableness is measured against prevailing professional norms and must be viewed under the totality of the circumstances as they existed at the time. Id. at 2065. The court's review of counsel's performance is extremely deferential; the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

Under the second prong the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional

-6-

errors, the result of the proceeding would have been different." Wilkerson v. Collins, 950 F.2d 1054, 1064 (5th Cir. 1992).  If the petitioner makes an insufficient showing on one prong of the test, the court need not address the other.  Strickland, 104 S. Ct. at 2069.

2.    Furet's Claim That His Plea Was Involuntary Because of His Counsel's Failure to Investigate and Failure to Pursue an Insanity Defense

Furet alleges that before his rearraignment he informed Bray of his "long history of mental illness, including suicide attempts, manic depression, schizophrenia, and eccentric behavior," and of his belief that the government was conspiring against him at the time of his arrest.[14]  Furet further alleges that Bray, aware of this information, should have investigated Furet's mental-health condition and pursued an insanity defense instead of advising Furet to plead guilty, and that Bray's ineffective assistance caused Furet to plead guilty involuntarily.[15]

The same two-part standard set out in Strickland — deficient performance and prejudice — applies to ineffective-assistance claims arising out of the plea process.  Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366, 370 (1985).  But because "[p]lea bargains are the result of complex negotiations suffused with uncertainty,

---

[14]§ 2255 Motion, Docket Entry No. 70, pp. 6-7.

[15]Supporting Memorandum, Docket Entry No. 71, pp. 2-3.

-7-

and defense attorneys must make careful strategic choices in balancing opportunities and risks," strict adherence to the deferential <u>Strickland</u> standard is "all the more essential when reviewing the choices an attorney made at the plea bargain stage." <u>Premo v. Moore</u>, 2011 WL 148253, at *6 (U.S. Jan. 19, 2011).

    (a) Whether Counsel Adequately Considered Pursuing an Insanity Defense

   The Supreme Court addressed how a court should assess the reasonableness of an attorney's decision to not investigate a particular defensive strategy in <u>Wiggins v. Smith</u>, 539 U.S. 510, 123 S. Ct. 2527 (2003):

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsels' judgments.

<u>Id.</u> at 2535 (quoting <u>Strickland</u>, 104 S. Ct. at 2066).  The relevant inquiry is what evidence was already known to counsel, and based on that evidence whether a reasonable attorney would have continued to investigate or limited further investigation.  <u>Id.</u>

   Bray knew that the government had indicted Furet for being a felon in possession of a firearm and was aware of the government's

-8-

allegations: (1) that police officers had pulled over the vehicle Furet was driving on May 25, 2006, (2) that Furet told the officers there was a firearm in the vehicle, (3) that Furet told the officers the firearm belonged to his girlfriend but that he had handled it before, (4) that the gun was operable and had traveled in interstate commerce, and (5) that Furet had been previously convicted of at least two felonies.[16]   Furet does not claim that these facts were inaccurate or present any evidence from which Bray could have deduced that Furet disputed the government's allegations.   Although Furet alleges that he was abused as a child and has a long history of mental-health problems, there is no evidence that these issues caused the conduct underlying the charged offense or that Furet indicated as such to his counsel. See Smith v. Quarterman, 515 F.3d 392, 404 (5th Cir. 2008).

Furet relies on Bouchillon v. Collins, 907 F.2d 589 (5th Cir. 1990), where the defendant's counsel failed to investigate the defendant's competency after the defendant had informed him that he had previously been hospitalized in multiple mental institutions. Id. at 596-97.   In holding that the counsel's decision was unreasonable, the Fifth Circuit emphasized that their holding hinged on the fact that the defendant's counsel had reason to believe an investigation was warranted, and limited the holding to

_____

[16]See Rearraignment Tr., Docket Entry No. 23, pp. 18:13-21:18.

-9-

the particular facts and circumstances of that case.  Id. at 596 n.22, 597.

Here, Furet's statements to Bray about his mental-health history, considered in tandem with the circumstances of Furet's arrest and the nature of the charged offense, allowed Bray to make a reasonable professional judgment without further investigation that an insanity defense would not be fruitful.  See Black v. Collins, 962 F.2d 394, 404 (5th Cir. 1992).  Furet's admission shortly after his arrest that the firearm was in the vehicle because his girlfriend bought it for "protection from Katrina people"[17] suggests that he was cognizant of the situation and the circumstances underlying his arrest.  The mental-health reports that Furet submits with his pleadings show that after his arrest he exhibited signs of depression and paranoia, but these symptoms are not on equal footing with the severe mental-health history of the defendant in Bouchillon, nor do they provide a solid basis on which Bray could have argued that Furet qualified for an insanity defense when viewed with the rest of the evidence.[18]  See Easley v. Dretke, 122 Fed. Appx. 124, 129 (5th Cir. 2005).

> (b)  Whether Counsel Performed Deficiently When He Recommended that Furet Plead Guilty

---

[17]Tr. of Rearraignment, Docket Entry No. 23, p. 19:11-18.

[18]Attachments to Supporting Memorandum, Docket Entry No. 71, pp. 14-21.

A defendant's plea must be made voluntarily and intelligently. <u>Matthew v. Johnson</u>, 201 F.3d 353, 364 (5th Cir. 2000).  If a "defendant is represented by counsel and pleads guilty upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." <u>Mangum v. Hargett</u>, 67 F.3d 80, 84 (5th Cir. 1995); <u>Hill</u>, 106 S. Ct. at 369.  It was objectively reasonable for Bray to conclude that pleading not guilty by reason of insanity would not have been productive based on his communications with his client and the nature of the offense with which he was charged — being a felon in possession of a firearm. Moreover, there is nothing in the record that suggests that Furet's plea was made involuntarily.  The court and Furet engaged in the following colloquy:

THE COURT:  Have you ever been diagnosed or treated for any type of mental problem?

DEFENDANT FURET:  A bipolar disorder.

THE COURT:  What?

DEFENDANT FURET:  Bipolar disorder, Your Honor.

THE COURT:  How long ago were you treated for that?

DEFENDANT FURET:  Still being treated right now.

THE COURT:  . . . Are you being treated for that now?

DEFENDANT FURET:  Yes, I take medication for it right now.

THE COURT:  Are you taking medication for it?

DEFENDANT FURET:  Yes, sir.

-11-

THE COURT:  What type of medication?

DEFENDANT FURET:  Zoloft and Trazodone.

THE COURT:  Does that medication prevent you from understanding what's happening to you?

DEFENDANT FURET:  No, sir.

THE COURT:  Does it prevent you from communicating with your attorney?

DEFENDANT FURET:  No, sir.

THE COURT:  All right.  Have you ever been diagnosed or treated for addiction to drugs or alcohol?

DEFENDANT FURET:  No, sir.

THE COURT:  Has anyone ever suggested to you that you needed treatment –

DEFENDANT FURET:  Yes, sir.

THE COURT:  – for any type of addiction you have?

DEFENDANT FURET:  Yes, sir.

MR. BRAY:  May I just tell him to let the Judge finish and then speak slowly and clearly.

THE COURT:  Has anyone ever suggested to you that you needed treatment for addiction to drugs and alcohol?

DEFENDANT FURET:  Yes, sir.

THE COURT:  Who?

DEFENDANT FURET:  Counselors.

THE COURT:  What?

DEFENDANT FURET:  Counselors in the system, counselors in the jail.

. . . .

THE COURT:  All right.  How long ago was that?

-12-

DEFENDANT FURET:  Up to two months ago.

THE COURT:  All right.  How long ago has it been since you used any type of drug?

DEFENDANT FURET:  About four months.

THE COURT:  And how long has it been since you consumed any alcoholic beverages?

DEFENDANT FURET:  About the same.

THE COURT:  All right.  Does your prior use of drugs or alcohol have any current effect on your ability to understand what's happening to you?

DEFENDANT FURET:  No, sir.

THE COURT:  Does it have any current effect on your ability to communicate with your attorney?

DEFENDANT FURET:  No, sir.

THE COURT:  How many times have you spoken with Mr. Bray about this case?

DEFENDANT FURET:  About five, six times.

THE COURT:  Has he answered all of your questions?

DEFENDANT FURET:  Yes, sir.

THE COURT:  Has he explained to you the charges against you?

DEFENDANT FURET:  Yes, sir.

THE COURT:  Has he discussed with you what the government would have to prove to establish your guilt?

DEFENDANT FURET:  Yes, sir.

THE COURT:  Has he discussed with you how the federal advisory sentencing guidelines might apply in your case?

DEFENDANT FURET:  Yes, sir.

THE COURT:  Has he done everything that you have asked him to do?

-13-

DEFENDANT FURET:  Yes, sir.

THE COURT:  Are you fully satisfied with the advice and counsel he has provided to you?

DEFENDANT FURET:  Yes, sir.[19]

When the court asked Furet whether he understood that the maximum sentence he was facing was ten years in prison, a fine of $250,000, three years of supervised release, and a $100 special assessment, Furet replied, "Yes, sir."[20]  The court and Furet then discussed the following:

THE COURT:  If the sentence that I should impose is greater than what you now anticipate or what your attorney or anyone else may have predicted, you will be bound by your guilty plea today regardless of the sentence.  You will not be allowed to change your mind and withdraw your guilty plea because you are dissatisfied with your sentence.  Do each of you understand that?

. . . .

DEFENDANT FURET:  Yes, Your Honor.

. . . .

THE COURT:  Do you?

DEFENDANT FURET:  Yes, sir.

THE COURT:  . . . Each of you has a right to go to trial.  Neither of you has to plead guilty.  You have a right to go to trial.  If you went to trial, you would have the right to the assistance of counsel, you would have the right to see and hear the government's witnesses and have your lawyer question them, you could call witnesses of your own, and you would not be required to testify unless you voluntarily chose to do so.  And you could not be

---

[19]Id. at 7:2-10:5.

[20]Id. at 14:14-19.

-14-

convicted unless the jury unanimously found beyond a
reasonable doubt that you were guilty.  If you plead
guilty today, however, there will not be a trial and you
will give up the right to a trial and all the protections
that are associated with a trial.  Do each of you
understand that?

DEFENDANT FURET:  Yes, sir.

. . . .

THE COURT:  Mr. Furet, I explained what you're charged
with a moment earlier.  Do you believe that you have any
plea agreement with the United States government in
connection with your plea?

DEFENDANT FURET:  No, sir.

THE COURT:  . . . Has the United States government made
any promises to you in connection with your plea?

DEFENDANT FURET:  No, sir.

THE COURT:  Has anyone threatened or forced you to plead
guilty?

DEFENDANT FURET:  No, sir.

THE COURT:  In order for the government — has anyone
promised you that you will receive a particular sentence
if you plead guilty?

DEFENDANT FURET:  No, sir.[21]

After Furet heard the government's anticipated evidence

against him, the court asked Furet if he did "everything that the

government's attorney just described," to which Furet replied,

"Yes, sir."[22]  Furet then entered a plea of guilty.

----

[21]Id. at 15:25–18:4.

[22]Id. at 21:22–24.

In sum, Furet testified that he desired to plead guilty, that no one had forced him to plead guilty, that he was not under the influence of any substances that affected his ability to understand the proceeding, that he was fully satisfied with the advice and counsel Bray provided, and that Bray had done everything Furet had asked him to do.[23]  The court also notes that it held a hearing on November 14, 2006, concerning Furet's allegation of ineffective assistance, and during the hearing Furet never mentioned that he was dissatisfied with Bray's investigation of Furet's mental-health history or the amount of credence Bray gave to Furet's condition.[24]

The court cannot conclude that Bray, presented with these circumstances, acted unreasonably when he recommended that Furet plead guilty and forego a prolonged investigation, a mental-health examination, and a potential insanity defense.  "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." Harrington v. Richter, No. 09-587, 2011 WL 148587, at *14 (U.S. Jan. 19, 2011).

        (c) Whether Furet Was Prejudiced

In addition, even if it were possible to conclude that Furet's counsel performed in a deficient manner, Furet has not shown that

---

[23]Rearraignment Tr., Docket Entry No. 23, pp. 9:24-10:5, 16:23-17:10.

[24]Tr. of Motion Hearing on November 14, 2006, Docket Entry No. 57.

-16-

such performance prejudiced him.   To establish prejudice, Furet must prove that (1) but for his counsel's error, he would not have pled guilty but would have insisted upon going to trial, <u>Armstead v. Scott</u>, 37 F.3d 202, 207 (5th Cir. 1994) (citing <u>Hill</u>, 106 S. Ct. at 370); and (2) his counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair.   <u>Id.</u> (citing <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 113 S. Ct. 838, 844 (1993)).   This assessment depends in part on a prediction of what the outcome of the trial might have been.   <u>Id.</u> at 206.   In the instance of an allegation that counsel failed to investigate exculpatory evidence, the resolution of the inquiry will depend "on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea," and in the instance of an allegation that counsel failed to advise the defendant of a potential affirmative defense, the resolution of the inquiry will depend "largely upon whether the affirmative defense likely would have succeeded at trial."   <u>Id.</u> at 206.

Federal law provides an affirmative defense for a defendant who established by clear and convincing evidence that "at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts."   18 U.S.C. § 17(a)-(b) (2006).   Furet does not allege, nor does the evidence suggest, that at the time of his arrest for being a felon in possession of a firearm he was unable to

-17-

appreciate "the nature and quality" of his acts or "the wrongfulness" of his acts.  In fact, when the law-enforcement officers informed him that it was illegal for him to be in possession of a firearm, Furet responded, "So how am I supposed to protect myself?"[25]  While the Fifth Circuit allows a defendant to use diminished-capacity evidence to negate the specific-intent element of an offense, the crime for which Furet is charged does not require a specific intent.  <u>See</u> 18 U.S.C. § 922(g).  Furet has not shown that it is likely that he could have prevailed under this defense.

Because Furet has not satisfied both prongs under <u>Strickland</u>, the court will deny his ineffective-assistance claims with respect to Bray's investigation and recommendations concerning Furet's mental-health history and condition.

### 3.   <u>Furet's Claim that Bray Failed to Object During the Rearraignment Proceeding</u>

Likewise, Furet has not established deficiency or prejudice with respect to Bray's representation during the rearraignment hearing.  The colloquy quoted above shows that Furet was able to understand the proceedings and was content with Bray's representation.  Although Furet informed the court he was on medication and had a history of mental-health issues, Bray was already aware of these facts.  To the extent Furet alleges that the

---

[25]<u>Id.</u> at 21:14–18.

medication affected his competency, his demeanor at the arraignment and his answers to the court indicate otherwise, and to the extent Furet alleges that his need for medication demonstrates a significant mental illness, Bray had already made a reasonable professional judgment not to pursue a defense based on Furet's alleged insanity.  In short, the record shows that Bray's performance was not deficient.  For the reasons explained above, Furet's allegations also fail to show prejudice because the circumstances at the time of the rearraignment did not support a theory that Furet was unaware of the nature or quality or the wrongfulness of his criminal conduct.

      4.   <u>Furet's Claim that His Counsel Failed to Request an Independent Evaluation and Failed to Present Furet's Mental-Health History as Mitigating Evidence</u>

In December of 2006, Iles replaced Bray as counsel for Furet[26] and represented Furet at sentencing, which was held on August 16, 2007.[27]  Before Furet was sentenced the court ordered that Furet undergo a mental-health evaluation, which was carried out by Dr. Randall Rattan in Fort Worth, Texas, between April 5 and May 23, 2007.[28]  Dr. Rattan diagnosed Furet with Antisocial Personality Disorder (APD) and concluded that Furet was likely competent at the

---

[26]Appointment of Attorney Larry Chris Iles for Dwayne Alberto Furet, Docket Entry No. 33.

[27]Sentencing Tr., Docket Entry No. 51.

[28]Psychological Evaluation, Presentence Investigation Report, Docket Entry No. 40, p. 1.

time of his plea and was competent to proceed to the sentencing phase.[29]   Dr. Rattan also noted that Furet suffered from a longstanding addiction to cannabis and cocaine.[30]

(a) Counsel's Decision to Not Seek an Independent Mental-Health Evaluation

Furet cannot meet his burden of showing that Iles's decision not to seek an independent mental-health evaluation falls below an objective standard of reasonableness.  Strickland, 104 S. Ct. at 2064.  On June 27, 2007, the court sent Iles a copy of the evaluation conducted by Dr. Rattan,[31] which states that Furet was competent to stand trial despite suffering from APD.[32] An attorney is not obligated to seek a second opinion on a client's mental-health condition based solely on the client's insistence. Conversely, a defendant does not have a constitutional right to choose a psychiatrist of his personal liking. See Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087, 1096 (1985).  Iles did not perform deficiently when he relied on the evaluation conducted by a neutral, court-appointed doctor.

(b) Counsel's Decision to Not Present Furet's Mental-Health History as Mitigating Evidence at Sentencing

---

[29]Id. at 9–10.

[30]Id.

[31]Letter to Mr. L. Chris Iles, Docket Entry No. 38.

[32]Psychological Evaluation, Docket Entry No. 93.

"Mitigating evidence that illustrates a defendant's character or personal history embodies a constitutionally important role in the process of individualized sentencing . . . ." Riley v. Cockrell, 339 F.3d 308, 316 (5th Cir. 2003). Counsel should reasonably investigate a defendant's personal history if it would be relevant in evaluating his moral culpability. Id. (citing Wiggins, 123 S. Ct. 2531). Iles received a copy of Furet's Psychological Evaluation, which provides a detailed description of Furet's childhood, mental-health history, and substantial criminal history.[33] Before sentencing Iles submitted written objections to the Presentence Investigation Report's calculation of the sentencing guidelines,[34] and at sentencing he made the following statement on behalf of his client:

> MR. ILES: Yes, your honor. I would ask the Court to consider the fact that my client did attempt to cooperate. He did provide information that — that I believe was — was meritorious, but it didn't result in any fruit. So, I believe that my client was making a good faith effort to redeem himself.
> I would also ask the Court to consider the fact that — regarding the upward departure, that the guidelines were enacted by Congress and were — there was a limitation put on the one point — 4A1.1 convictions of a — four total points for a reason. And I would ask the Court to — stick with that and not upwardly depart.
> I believe that all the factors in 3553(a) would be met by imposing a sentence within the guideline range, and I would ask for a sentence at the low end of the guideline range. My client did accept responsibility for

---

[33]Psychological Evaluation, Presentence Investigation Report, Docket Entry No. 40.

[34]Objection to Presentence Investigation Report, Docket Entry No. 43.

what he did.  He has pled guilty, and I — I would respectfully ask the Court to give him the low [end] of the guideline range, your Honor.[35]

Furet alleges that Iles performed deficiently by not mentioning Furet's mental-health history as a mitigating factor in the court's sentencing decision.  Although evidence that a defendant has a history of mental-health issues could in some circumstances be viewed as mitigating evidence, it could just as easily serve as a basis for a court's decision to upwardly depart. See Martinez v. Quarterman, 481 f.3d 249, 255 (5th Cir. 2007). This is especially true in this instance because of the defendant's "numerous arrests, his propensity for violence, and the likelihood of recidivism."[36]  In light of these circumstances, Iles's decision to focus on Furet's cooperation with the authorities and acceptance of responsibility for his actions was a reasonable attempt to portray positive aspects of his client's character.[37]  The court also concludes that Furet was not prejudiced because the court reviewed Furet's psychological evaluation and considered its contents in determining an appropriate sentence.

---

[35]Sentencing Tr., Docket Entry No. 51, pp. 3:13−4:5.

[36]Id. at 5:4−7.

[37]Furet did not mention any mental health issues at his sentencing.  Instead, he stated: "I'd just like to say I'm sorry for what I did.  I'd like to apologize to my family, to the Court, and to you.  I know it's been a next — the next bad decision I made in my life, and I just want to get it over with and make better of it."  Id. at 3:6−10.

> (c) Counsel's Decision to Not Present Furet's Mental-
>     Health History as Mitigating Evidence on Appeal

"A criminal defendant has a right to receive effective assistance of counsel on direct appeal," and a defendant's claim of ineffective assistance is analyzed under the two-part <u>Strickland</u> test. <u>United States v. Reinhart</u>, 357 F.3d 521, 525 (5th Cir. 2004). "Counsel is not deficient for not raising every non-frivolous issue on appeal." <u>United States v. Phillips</u>, 210 F.3d 345, 348 (5th Cir. 2000). "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." <u>Id.</u> In the appellate context, the prejudice prong first requires a showing that the appellate court would have afforded relief on appeal. <u>Id.</u> at 350.

On appeal Iles challenged the upward departure and the extent of the departure.[38] Aware that the court's sentencing determination (1) was made after reviewing Furet's psychological evaluation, and (2) was based on the Presentence Investigation Report's recommendation and the factors set out in Section 3553(a), Iles acted reasonably when he chose not to argue that the court did not adequately consider mitigating factors. Furthermore, for the same reasons, Furet cannot show that the Fifth Circuit would have afforded Furet relief had Iles invoked Furet's mental-health

---

[38]<u>United States v. Furet</u>, No. 07-20633 (5th Cir. June 5, 2008) (per curiam), attachment to § 2255 Motion, Docket Entry No. 70, pp. 1-3.

-23-

condition on appeal, especially since the sentencing decision was reviewed for an abuse of discretion.

**B.   Due Process Claim**

Furet also alleges that he was denied due process because he was "convicted while incompetent," and because the court had reason to question Furet's competency but failed to suspend the rearraignment proceeding to conduct a competency hearing.[39]

The conviction of an accused person while he is legally incompetent violates due process. Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836, 838 (1966); Lokos v. Capps, 625 F.2d 1258, 1261 (5th Cir. 1980).  The competency standard for pleading guilty is the same as the competency standard for standing trial:  "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." Godinez v. Moran, 509 U.S. 389, 113 S. Ct. 2680, 2685, 2685-87 (1993) (internal quotations omitted).  A court, moreover, must "sua sponte conduct an inquiry into a defendant's mental capacity if the evidence raises a bona fide doubt as to the defendant's competency at that time." Lokos, 625 F.2d at 1261 (citing Pate, 86 S. Ct. at 842).

---

[39]Supporting Memorandum, Docket Entry No. 71, pp. 8-9.

-24-

The transcript of the rearraignment proceeding shows that Furet was alert and fully competent to plead guilty and that no bona fide doubt of Furet's competency presented itself during the proceeding.  See United States v. Drummond, 910 F.2d 284, 285 (5th Cir. 1990), cert. denied, 111 S. Ct. 1006 (1991).  As transcribed in detail above, Furet intelligibly communicated with the court throughout the proceeding:  he was advised of the importance of giving true, complete, and accurate answers to the court's questions[40]; he stated that he had spoken with his attorney five or six times before the proceeding[41]; he indicated that he understood that he would not be allowed to change his mind and withdraw the guilty plea because he was dissatisfied with his sentence and that he was giving up his right to a trial by pleading guilty[42]; he indicated that no one had threatened or forced him to plead guilty or promised him a particular sentence[43]; he admitted to doing all of the acts underlying the charged offense[44]; and he entered a guilty plea.[45]  Furet even had the presence of mind to mention to

---

[40]Rearraignment Tr., Docket Entry No. 23, p. 6:2-10.

[41]Id. at 9:11-13.

[42]Id. at 15:25-16:7, 17:6-10.

[43]Id. at 17:20-18:3.

[44]Id. at 21:22-24.

[45]Id. at 22:19-23.

his attorney in the middle of the proceeding that the government had said the wrong date when referencing a prior conviction.[46]

Furet nevertheless alleges that the court was obligated to question Furet's competency during the proceeding because Furet stated that he was on the medications Zoloft and Trazodone.  With respect to Furet's medication, the court and Furet engaged in the following discussion:

> THE COURT:  Have you ever been diagnosed or treated for any type of mental problem?
>
> DEFENDANT FURET:  A bipolar disorder.
>
> THE COURT:  What?
>
> DEFENDANT FURET:  Bipolar disorder, Your Honor.
>
> THE COURT:  How long ago were you treated for that?
>
> DEFENDANT FURET:  Still being treated right now.
>
> THE COURT:  . . . Are you being treated for that now?
>
> DEFENDANT FURET:  Yes, I take medication for it right now.
>
> THE COURT:  Are you taking medication for it?
>
> DEFENDANT FURET:  Yes, sir.
>
> THE COURT:  What type of medication?
>
> DEFENDANT FURET:  Zoloft and Trazodone.
>
> THE COURT:  Does that medication prevent you from understanding what's happening to you?
>
> DEFENDANT FURET:  No, sir.

---

[46] Id. at 22:1-3.

THE COURT:  Does it prevent you from communicating with your attorney?

DEFENDANT FURET:  No, sir.[47]

The court had no reason to doubt Furet's competency merely because he was taking medication.  Furet stated that he was able to understand the proceeding and to communicate with his attorney. Medication ordinarily improves rather than detracts from a person's condition, and this assumption was reinforced in this instance by Furet's coherent responses to the court's questions and his lucid demeanor throughout the proceeding.

## C.   Furet's Request for an Evidentiary Hearing

Because the record conclusively shows that Furet is not entitled to relief, the court will deny Furet's request for an evidentiary hearing.  See 28 U.S.C. § 2255(b); Drummond, 910 F.2d at 285 ("Where the defendant's testimony evidenced his lucidity and competence, and there is a clear inference from the records that the defendant was fully competent, it would be a waste of judicial resources to require a hearing.").

## IV. Conclusion and Order

For the reasons explained above, the court concludes that Dwayne Alberto Furet has not established that he is entitled to

---

[47]Id. at 7:2–23.

relief on either his ineffective-assistance or his due-process claims, or that he is entitled to an evidentiary hearing. Accordingly, Furet's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Docket Entry No. 70) is **DENIED**.   The United States' Response to Petitioner's § 2255 Motion, which requests that Furet's § 2255 Motion be dismissed with prejudice, is **GRANTED**.

   **SIGNED** at Houston, Texas, on this 28th day of January, 2011.

                                   _____
                                        SIM LAKE
                           UNITED STATES DISTRICT JUDGE